Matthew J. Langley (SBN 342846)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 312-576-3024
matt@almeidalawgroup.com

[additional counsel listed below]

_Attorneys for Plaintiff and the Proposed Class_

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALICE KYUNGJO, HELEN HERNANDEZ, and EBONY EDGERSON, _individually and on behalf of herself and all others similarly situated,_<br><br>Plaintiffs,<br><br>v.<br><br>SAKS & COMPANY, LLC, SAKS FIFTH AVENUE, INC. and SAKS OFF 5TH, LLC,<br><br>Defendants. | Case No. 3:24-cv-6934<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Alice Kyungo, Helen Hernandez, and Ebony Edgerson ("Ms. Kyungo," "Ms. Hernandez," "Ms. Edgerson," collectively, "Plaintiffs"), California citizens, on behalf of themselves and hereby allege the following at all times relevant to this complaint:

**NATURE OF THE ACTION**

1.      Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.      As the Federal Trade Commission advises in its Guides Against Deceptive Pricing,

1

it is deceptive to make up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1.

4.      Additionally, fake sales violate California's general prohibition on unfair and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

5.      Moreover, California's False Advertising Law specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." *See e.g.*, Cal. Civ. Code § 1770(a)(13).

6.      Likewise, California's Consumer Legal Remedies Act provides that "No price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code §17501.

7.      Defendants Saks & Company, LLC, Saks Fifth Avenue, Inc. and Saks Off 5th, LLC ("Saks," or "Defendants") sell and market clothing and accessories ("Products").

8.      The Products are sold online and in stores.



9.      Defendants prominently advertise sales both online and in stores. These advertisements include purported regular prices, purported discounts, and purported end dates for the sales. For example:

CLASS ACTION COMPLAINT

Offer ends June 25 2024

10.    Purported regular prices, and associated discounts:

**Maison Francis Kurkdjian**
Baccarat Rouge 540 Eau de Parfum
$205 - $645
**$174.25 - $548.25**
★★★★☆

**RENEE C.**
Floral Faux Wrap Maxi Dress
$215 **$79.99**
(62% OFF)
EXTRA 20% OFF SELECT STYLES
WITH CODE: DRESSUP

11.    But these advertisements are false. The sales are not limited in time and the discounts continue to be available after date on which Defendants represent the offer ends.

12.    Ms. Kyungo, Ms. Hernandez, and Ms. Edgerson made online purchases of Products from Saks Fifth Avenue, Inc. and Saks Off 5th, LLC.

13.    Like other Sak's customers, when the Plaintiffs bought the Products, Saks advertised that a purported sale was going on.

14.    But none of that was true. The regular prices published by Defendants were not the prevailing regular prices. Had Defendants been truthful, Plaintiffs and other consumers would not have purchased the Products or would have paid less for them.

15.    The Plaintiffs believed that the Saks Products that they purchased retailed for the displayed regular prices. They further believed that they were getting a substantial discount from the regular prices, and that the sale would end soon.

16.    These reasonable beliefs are what caused them to buy from the Defendants. If the

1  Products purchased were not on sale, they would not have bought them.

2      17.    Plaintiffs bring this case on behalf of themselves and other customers who purchased

3  Products that Defendants misrepresented were "on sale" from Saks Fifth Avenue, Inc. and Saks Off

4  5th, LLC.

5  **THE PARTIES**

6      18.    Ms. Alice Kyungo is a natural person and citizen of California who resides in the

7  Northern District of California, in Berkley, California Ms. Kyungo purchased Products from

8  Defendants during the four (4) years prior to the filing of this Complaint ("the Class Period"). Ms.

9  Kyungo was injured in fact and lost money as a result of the Defendants' actions.

10     19.    Ms. Helen Hernandez is a natural person and citizen of San Diego, California. Ms.

11 Hernandez purchased Products from Defendants during the four (4) years prior to the filing of this

12 Complaint ("the Class Period"). Ms. Hernandez was injured in fact and lost money as a result of the

13 Defendants' actions.

14     20.    Ms. Ebony Edgerson is a natural person and citizen of Fairfield, California. Ms.

15 Edgerson purchased Products from Defendants during the four (4) years prior to the filing of this

16 Complaint ("the Class Period"). Ms. Edgerson was injured in fact and lost money as a result of the

17 Defendants' actions.

18     21.    Defendant Saks & Company, LLC is a corporation headquartered in New York.

19 Saks's corporate address is 225 Liberty St, New York, New York, 10281.

20     22.    Defendant Saks Fifth Avenue, Inc. is a subsidiary of Saks & Company, LLC. Saks

21 Fifth Avenue, Inc.'s corporate address is 225 Liberty St, New York, New York, 10281.

22     23.    Defendant Saks Off 5th, LLC is a subsidiary of Saks & Company, LLC. Saks Fifth

23 Avenue, Inc.'s corporate address is 225 Liberty St, New York, New York, 10281.

24     24.    Defendants are affiliated companies.

25     25.    Upon information and belief and at all times relevant to this Complaint the

26 Defendants operated together to market and sell products throughout the U.S., including California.

27 The Sax Group "subsidiaries" (e.g., Saks Fifth Avenue, Inc. and Saks Off 5th, LLC) operated like

28

4

divisions or departments within the larger Saks company.

26. Upon information and belief and at all times relevant to this Complaint: Each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

27. Upon information and belief and at all times relevant to this Complaint: Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## JURISDICTION AND VENUE

28. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a putative class action wherein, upon information and belief, the aggregate amount in controversy exceeds $5,000,000; there are over 100 class members; and minimal diversity requirements are met. *See* 28 U.S.C. § 1332(d)(2).

29. This Court has personal jurisdiction over Defendants because Defendants regularly conduct substantial business in California.

30. Defendants advertise and sell their Products in California and serve a market for their Products in California. Due to Defendants' actions, their products have been marketed and sold to consumers in California and harmed consumers in California. Plaintiffs' claims arise out of Defendants' contacts with this forum. Due to Defendants' actions, Plaintiffs purchased Defendants' Products in California and were harmed in California.

31. Venue is proper in the District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(d) because a substantial part of the events giving rise to the

Plaintiffs' claims occurred in this judicial district. Defendants advertise and sell their Products to consumers in this District and Plaintiffs' claims arise out of Defendants' contacts in this forum. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including Defendants' sales to Plaintiffs.

## FACTUAL ALLEGATIONS

### A. Defendant's fake sales and discounts

32.     Defendants sell clothing and accessories, such as jackets, jewelry, and bags. Defendants sells its Products directly to consumers in stores and online, through its websites, https://www.saksoff5th.com and https://www.saksfifthavenue.com.

33.     Defendant's websites create an illusion that customers are receiving a limited-time discount. Saks does this by advertising fake limited-time sales, fake regular prices, and fake discounts based on the fake regular prices.

34.     Unfortunately, Defendants' business model relies on deceiving customers with fake sales. On a typical day, the websites at issue prominently display on their landing page some form of a sale where all or nearly all products are supposedly marked down by a specified percentage—for example, 40, 50, or 60% off. Products on the sites are represented as being marked down by the specified percentage discount from a substantially higher reference price (hereafter, the "Reference Price"). The supposed markdowns are represented to the customer by prominently displaying a crossed-out Reference Price next to the sale price reduced by the specified percentage discount. Alternatively, Defendants run the same fake promotions by providing customers with sitewide promo codes and/or discounts—typically for 40, 50, or 60% off—which customers may use to obtain reductions off items from the Reference Price. Defendants employ these deceptive tactics to convey to customers that the product had previously sold in the recent past at the Reference Price,

but is being sold to the customer at a substantial discount.







35.     The screen captures above were taken on September 26, 2024, and demonstrate that the Defendants are always offering items on sale.

36.     Saks Products are always on sale, and these sales persist. For example, SAKS has prominently displayed, for over a year, on its website, sales that are designed to induce consumers to purchase its Products under the mistaken belief they are getting a significant bargain.

37.     For example, the Kaya Tweed Blazer is regularly priced $395 and listed as on sale at $118.50 and $97.95.



Captured August 2, 2023.



Captured September 18, 2023.

38.     These discounts appear to be only for a limited time, but, in reality, they are ongoing.

 Gmail                                      Brittany Steffens <brittsteffens2@gmail.com>

**Kaya Tweed Blazer Question**
8 messages

**Brittany Steffens** <brittsteffens2@gmail.com>                    Wed, Aug 16, 2023 at 7:49 AM
To: customerservice@generationloveclothing.com

Hi,

I purchased your "Kaya Tweed Blazer" from Saks and wanted to know if you could tell me what season (year) this blazer was from? Also, do you offer it directly? When was it first put on sale?

Thank you!
Brittany




**Alexis Valladares (Customer Service)** <customerservice@generationloveclothing.com>     Thu, Aug 17, 2023 at
                                                                                          7:21 AM
Reply-To: Customer Service <customerservice@generationloveclothing.com>
To: Brittany Steffens <brittsteffens2@gmail.com>

Your request (7783) has been updated. To add additional comments, reply to this email.

**Alexis Valladares** (Generation Love)
Aug 17, 2023, 08:21 CST

Hi Brittany,

This is a style from our Fall 22 collection.

We do have it still available on our website, and it is on sale there as well!  Here is the Link: https://

39.     The Kaya Tweed Blazer is an item from the Fall 2022 line of manufacturer,

CLASS ACTION COMPLAINT

Generation Love, as evidenced by the screenshot above.

40.     After a year on the market a product is never offered at full price as it would not be economically beneficial to do so. By the time the Plaintiff purchased this item, it was no longer worth the full price and therefore the purported discount was false.

41.     Defendants' websites list fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.

42.     For example, on September 18, 2023, Defendants advertised a sale of its shoes. On this day, Defendants offered its Sam Edelman Danna Suede Pumps for $59.99 (a purported 60% off its regular price of $150):



43.     But the truth is, the Sam Edelman Danna Suede Pumps is always listed as "on sale" at a discounted price, as evidenced by the screenshot below taken on September 19, 2024. The shoe is listed as on sale for $39.97, and the regular price is $150:



44.     As a result, Defendants falsely convey to customers that they are receiving a substantial markdown or discount, when in reality the alleged discount is false and fraudulent.

45.     Using these tactics, Defendants lead reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y; and they will get a discount.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later

46.     Defendants further reinforce the false conception that the customer has received a deep discount off an original, retail, or regular price during the order process. More specifically, Defendants include a line item for the "Discount" or "Promotions included" that the customer has received, which computes the amount of the supposed "Discount" or "Promotion" corresponding to the percentage markdown from the false Reference Price the customer purportedly benefited from according to each product's individual product description page. This phantom "Discount" or "Promotion" appears in the final order confirmation and receipt displayed to customers and delivered to customers by e-mail after the order has been completed and payment has been made. By doing so, Defendants not only deceive the customer with the sham sale, but then further use that deception to build goodwill to lure customers back for more fake "sales" and "discounts."

47.     These pricing and advertising practices reflecting high-pressure fake sales are patently deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendants on sale and at a substantial and deep discount. The truth is that Defendants rarely, if ever, sells any of their products at the Reference Price. The Reference Price is, therefore, an artificially inflated price. In turn, the advertised discounts are thus nothing more than phantom markdowns.

**B.  Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendants' Deceptive Pricing Scheme Influences Consumer Behavior and Affects Consumers' Perceptions of a Product's Value**.

48.     The effectiveness of Defendants' deceitful pricing scheme is backed up by

longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992). Thus, "empirical studies indicate that, *as discount size increases, consumers' perceptions of value and their willingness to buy the product increase*, while their intention to search for a lower price decreases." *Id.* at 56 (emphasis added). For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing (strikingly similar to the claim at issue here) had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

49.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. *Compeau, Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.* (emphasis added).

50.     In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

51.     The unmistakable inference to be drawn from this research and the Ninth Circuit's

opinion in Hinojos is that the deceptive advertising through the use of false reference pricing employed here by Defendants is intended to, and does in fact, influence customer behavior—as it did Plaintiffs' purchasing decision here—by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

**C. Defendants' Advertisements Are Unfair, Deceptive, and Unlawful.**

52.     As the Federal Trade Commission states in its Guides Against Deceptive Pricing, "where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the 'bargain' being advertised is a false one." 16 C.F.R. § 233.1.

53.     Advertising such false "bargains" is false, misleading, and unfair. Accordingly, it violates California's Unfair Competition law, which bans "unlawful, unfair or fraudulent" business acts and practices. See Cal. Bus. & Prof. Code § 17200.

54.     In addition, California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not. Moreover, California's False Advertising Law specifically provides that "no price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

55.     California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

56.     And finally, California's Unfair Competition Law bans unlawful, unfair and deceptive business practices. See Cal. Bus. & Prof. Code § 17200.

57.     Here, as described in detail above, Defendants made untrue and misleading statements about its prices. Defendants advertised former prices that were not true former prices and

were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendants advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendants made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including false statements regarding the reasons for its sitewide sales (e.g., advertising a seasonal "President's Day Sale," when in fact the sale is ongoing), the existence of sitewide sales and sales of individual items, and the amounts of price reductions resulting from those sales. And Defendant engaged in unlawful, unfair, and deceptive business practices.

58.    Further, under California law, "No price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding." Cal. Bus. & Prof. Code §17501.

59.    As described in detail above, Defendants advertise their Products using former prices that were not the prevailing market prices within the preceding three months.

60.    So, not only are Defendants' business practices generally deceptive and fraudulent – and therefore unlawful – they are also specifically prohibited by statute.

**D. Defendants' Advertisements Harm Consumers.**

61.    Based on Defendants' advertisements, reasonable consumers would expect that the listed regular prices are former prices at which Defendants actually sells their Products and are the prevailing prices for the Products.

62.    Reasonable consumers would also expect that, if they purchase during the sale, they will receive the advertised discount from the regular purchase price.

63.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a substantial discount.

64.    Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often

closes the deal, if they are wavering or are undecided on making a purchase."[1] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2]

65.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3]

66.     Thus, Defendants' advertisements harm consumers by inducing them to make purchases based on false information.

**E. Plaintiff Was Misled by Defendants' Misrepresentations.**

67.      Between May and September 2023, the Plaintiffs purchased Products from the Defendants.

68.     Ms. Kyungo purchased a Kaya Tweed Blazer at a price of $118.50. As shown above in ¶ 35 of the screenshot taken on August 6, 2023.

---

[1] www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior.
[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).
[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

Order #: 308859704 | Order date: Aug 2, 2023

Hi Alice,

Your package was delivered to:
**1887 Tunnel Rd, Berkeley, CA 94705**

10:42

‹ 368    Your Saks Fifth Avenu...    ∧  ∨

**Kaya Tweed Blazer**
Color: HUNTER GREEN
Size: Medium
Quantity: 1
Price: 118.50

**VIEW ORDER DETAILS**

16

69.     Ms. Hernandez purchased multiple Products on August 9, 2023, including a dress, leggings, pants, jeans, and tops. As evidenced in the screenshot below, each item was sold at a "discounted" price.

CLASS ACTION COMPLAINT

70.     The items purchased by Ms. Hernandez had been listed as "on sale" multiple times throughout the previous 90-day period before she purchased them.

71.     Ms. Edgerson purchased the Sam Edelman Danna Pointed Toe Heels for $59.99 in May 2023, the so called "sale price" as evidenced above in ¶¶ 38 -39.



Arrives Wednesday, May.
10 - Thursday, May. 11

**Sam Edelman**
Danna Suede Pumps
9
Black
$59.99

---

**Order Number**
117807354

**Placed On**
May 2, 2023

72.     These Products were purchased while the Plaintiffs were living in California.

73.     The websites for each Defendant represented that the Plaintiffs were receiving a substantial discount from the regular price for the respective items purchased by Plaintiffs.

74.     Plaintiffs read and relied on the representations on the website that the Product had

18

CLASS ACTION COMPLAINT

the published regular price, and that they were receiving the advertised discount from the regular price.

75.    Plaintiffs would not have made their respective purchases if they had known that the Product was not discounted as advertised, and that they were not receiving the advertised discount.

**F.  Defendants Breached Their Contract.**

76.    When Plaintiffs purchased and paid for the Products they bought as described above, they accepted offers that Defendants made, and thus, a contract was formed at the time that they made the purchase. The offer was to provide the Products with a particular listed regular price and to provide the discount advertised on the website.

77.    Plaintiffs and Defendants entered into contracts.

78.    The regular price and market value of the Products Plaintiffs would receive, and the amount of the discounts that they would be provided off the regular prices of the items, were specific and material terms of the contracts.

79.    Plaintiffs performed their obligations under the contract by providing Defendants with the discounted price.

80.    Defendants breached these contracts by failing to provide Plaintiffs with a product with a market value equal to the regular price displayed on its websites, and by failing to provide the discount promised.

**G.  No Adequate Remedy at Law.**

81.    Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

82.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims. For example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages. No such requirements exist to obtain restitution. Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain. In addition, the remedies at law available to

Plaintiffs are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## CLASS ACTION ALLEGATIONS

83.     Plaintiffs bring this action on behalf of the following classes of persons (the "Classes"), subject to modification after discovery and case development:

Nationwide Class: All persons who, within the applicable statutory period, purchased one or more of Saks' Products advertised at a discount.

California Subclass: all persons who, while in the state of California, and within the applicable statutory period, purchased one or more of Saks' Products advertised at a discount.

84.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**Numerosity & Ascertainability**

85.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

86.     Numerosity is satisfied. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Ms. Hood believes the number of Class members are in the thousands of persons, if not more. Individual joinder of these persons is impracticable.

87.     Class members can be identified through Defendants' sales records and public notice.

**Predominance of Common Questions**

88.   There are questions of law and fact common to the Plaintiffs and to the Class that predominate over any questions affecting only individual Class members, including, but not limited to:

    a.   whether Defendants made false or misleading statements of fact in its advertisements;

    b.   whether Defendants violated California's consumer protection statutes;

    c.   whether Defendants committed a breach of contract;

    d.   whether Defendants committed a breach of an express or implied warranty;

    e.   damages needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy**

89.   Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiff purchased the Saks Products advertised at a discount on Defendants' website. There are no conflicts of interest between Plaintiff and the class. The Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members, and they will adequately and fairly protect the interests of the Class members. The Plaintiffs intend to prosecute this action vigorously and has taken actions before filing this complaint by hiring skilled and experienced counsel and by making a pre-suit demand on behalf of class members to protect the interests of the Class. There is no conflict between the Plaintiffs and the proposed class.

90.   A class action is the superior method for fair and efficient adjudication of the Plaintiffs' and the Class members' claims. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. In addition, it is likely that most class members are unaware that they have claims. Finally, the prosecution of separate actions by the individual class members, even, if possible, would create a risk of inconsistent or varying adjudications regarding the individual class members.

91.   There are no difficulties likely to be encountered by the court in management of this putative class action.

## CAUSES OF ACTION

### COUNT I
### Violation of California's False Advertising Law
### Bus. & Prof. Code §§ 17501 *et. seq.*
### (By Plaintiffs and the California Subclass)

92.     Plaintiffs incorporate the preceding paragraphs as if alleged herein.

93.     Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

94.     Defendants have violated Section 17501 of the Business and Professions Code.

95.     As alleged more fully above, Defendants advertise former prices on its website along with discounts. Defendants do this, for example, by crossing out a higher price (e.g., $295.00) and displaying it next to the "regular" price. Defendants also do this by publishing a purported regular price (e.g., $295.00) and stating that a discount will be provided during the sale (e.g., "Take 30% OFF," or publishing a "Discount" with a specific discount amount).

96.     The prices advertised as former prices by Defendants were not the true former prices of the Products. Accordingly, Defendants' statements about the former prices of its products were untrue and misleading.

97.     Defendants' former price advertisements did not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendants' advertisements did not indicate whether or when the purported former prices were offered at all.

98.     Defendants violated, and continue to violate, Section 17501 to induce Plaintiffs and the subclass to make purchases on its website based on the advertised former prices.

99.     Defendants' misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when purchasing Defendants' Products. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decision.

100.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Saks Products.

101.    Defendants' misrepresentations were a substantial factor and proximate cause in

causing damages and losses to Plaintiffs and the subclass.

102.  Plaintiffs and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Saks Products if they had known the truth, and/or (b) they overpaid for the Products because the Saks Products were sold at a price premium due to the misrepresentation.

**COUNT II**
**Violation of California's False Advertising Law**
**Bus. & Prof. Code §§ 17500 et. seq.**
**(By Plaintiffs and the California Subclass)**

103.  Plaintiffs incorporate each and every factual allegation set forth above.

104.  Plaintiffs bring this cause of action on behalf of himself and members of the California Subclass.

105.  Defendants have violated Section 17500 of the Business and Professions Code.

106.  As alleged more fully above, Defendants made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.

107.  Defendants did this by advertising false regular prices and false discounts regarding its Products.

108.  Defendants' representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendants knew or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

109.  Defendants' misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when purchasing Saks Products. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decision.

110.  In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

111.  Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

112.  Plaintiffs and the subclass were injured as a direct and proximate result of

Defendants' conduct because (a) they would not have purchased Saks Products if they had known the truth, and/or (b) they overpaid for the Products because the Saks Products were sold at a price premium due to the misrepresentation.

**COUNT III**
**Violation of California's Consumer Remedies Act**
**(By Plaintiffs and the California Subclass)**

113.    Plaintiffs incorporate each and every factual allegation set forth above.

114.    Plaintiffs bring this cause of action on behalf of himself and members of the California Subclass.

115.    Plaintiffs and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

116.    Plaintiffs and the subclass have engaged in "transactions" with Defendants as that term is defined by California Civil Code § 1761(e).

117.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

118.    As alleged more fully above, Defendants made and disseminated untrue and misleading statements of facts in its advertisements to subclass members. Defendants did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and advertising fake discounts.

119.    Defendants violated, and continues to violate, Section 1770(a)(13) of the California Civil Code by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website. Defendants have violated Section 1770(a)(13) by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (e.g., "President's Day sale," when in fact the sale is ongoing and not limited to President's Day).

120. Defendants violated, and continues to violate, Section 1770(a)(5) of the California Civil Code by representing that Products offered for sale on its website have characteristics or benefits that they do not have. Defendants represent that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for the Products.

121. Defendants violated, and continue to violate, Section 1770(a)(9) of the California Civil Code. Defendants violate this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

122. Defendants' representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendants knew or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

123. Defendants' misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the Saks Product. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decision.

124. In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Saks Products.

125. Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

126. Plaintiffs and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Saks Products if they had known the discounts and/or regular prices were not real, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

127. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the subclass, seek injunctive relief.

128. CLRA § 1782 NOTICE. A CLRA demand letter is being served on Defendants contemporaneously with this Complaint via certified mail (return receipt requested). The letter provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the

1  unlawful, unfair, false and/or deceptive practices alleged here. Defendants do not have a California

2  headquarters. If Defendants do not fully correct the problem for Plaintiffs and for each member of

3  the California Subclass within 30 days of receipt, Plaintiffs and the California Subclass will seek all

4  monetary relief allowed under the CLRA.

**COUNT IV**
**Violation of California's Unfair Competition Law**
**(By Plaintiffs and the California Subclass)**

7  129.   Plaintiffs incorporate each and every factual allegation set forth above.

8  130.   Plaintiffs bring this cause of action on behalf of himself and members of the

9  California Subclass.

10  131.   Defendants have violated California's Unfair Competition Law (UCL) by engaging

11  in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

12  132.   Defendants engaged in unlawful conduct by violating the CLRA and FAL, as

13  alleged above and incorporated here. In addition, Defendants engaged in unlawful conduct by

14  violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting

15  commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C.

16  § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA.

17  16 CFR § 233.1, § 233.2.

18  133.   As alleged in detail above, Defendants' representations that its Products were on

19  sale, that the sale was limited in time, that the Products had a specific regular price, and that the

20  customers were receiving discounts were false and misleading.

21  134.   Defendants' representations were misleading to Plaintiffs and other reasonable

22  consumers.

23  135.   Plaintiffs relied upon Defendants' misleading representations and omissions, as

24  detailed above.

25  136.   As alleged in detail above, Defendants committed "unfair" acts by falsely

26  advertising that its Products were on sale, that the sale was limited in time, that the Products had a

27  specific regular price, and that the customers were receiving discounts.

28

26

137.     Defendants violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

138.     The harm to Plaintiffs and the subclass greatly outweighs the public utility of Defendants' conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

139.     Plaintiffs and the subclass could not have reasonably avoided this injury. As alleged above, Defendants' representations were deceptive to reasonable consumers like Plaintiffs.

140.     Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

141.     Defendants' representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the Saks Product. Defendants' representations were a substantial factor in Plaintiffs' purchase decision.

142.     In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Saks Products.

143.     Defendants' representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass members.

144.     Plaintiffs and the subclass were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Saks Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products are sold at the regular price and not at a discount.

**COUNT V**
**Breach of Contract**
**(By Plaintiffs and the Nationwide Subclass)**

145.     Plaintiffs incorporate each and every factual allegation set forth above.

146.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide

1    Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the

2    California Subclass.

3        147.    Plaintiffs and class members entered into contracts with Saks when they purchased

4    Products from Defendants.

5        148.    The contracts provided that Plaintiffs and class members would pay Saks for the

6    Products ordered.

7        149.    The contracts further required that Saks provides Plaintiffs and class members with

8    Products that have a market value equal to the regular prices displayed on the website. They also

9    required that Saks provides Plaintiffs and the class members with the discount advertised on the

10   website. These were specific and material terms of the contract.

11       150.    The specific discounts were a specific and material term of each contract, and were

12   displayed to Plaintiffs and class members at the time they placed their orders.

13       151.    Plaintiffs and class members paid Saks for the Products they ordered, and satisfied

14   all other conditions of their contracts.

15       152.    Saks breached the contracts with Plaintiffs and class members by failing to provide

16   Products that had a prevailing market value equal to the regular price displayed on its website, and

17   by failing to provide the promised discount. Saks did not provide the discount that Saks had

18   promised.

19       153.    As a direct and proximate result of Defendants' breaches, Plaintiffs and class

20   members were deprived of the benefit of their bargained-for exchange and have suffered damages

21   in an amount to be established at trial.

22                          **COUNT VI**
                  **Breach of Express Warranty**
23        **(By Plaintiffs and the California Subclass)**

24       154.    Plaintiffs incorporate each and every factual allegation set forth above.

25       155.    Plaintiffs bring this cause of action on behalf of themselves and the California

26   Subclass.

27       156.    Defendants, as the marketer, distributor, and/or seller of its Products, issued

28

CLASS ACTION COMPLAINT

material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendants' website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

157.     This warranty was part of the basis of the bargain and Plaintiffs and members of the subclass relied on this warranty.

158.     In fact, the Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

159.     Plaintiffs provided Defendants with notice of the breaches of warranty, by mailing notice letters to Defendants' headquarters, with this Complaint.

160.     Plaintiffs and the subclass were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased its Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products are sold at a price premium due to the warranty.

**COUNT VII**
**Breach of Implied Warranty**
**(By Plaintiffs and the California Subclass)**

161.     Plaintiffs incorporate each and every factual allegation set forth above.

162.     Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

163.     As described in greater detail above, Defendants impliedly warranted that the Products had a market value equal to the regular price displayed on Defendants' websites or in stores.

164.     This warranty was part of the basis of the bargain and Plaintiffs and members of the subclass relied on this warranty.

165.     In fact, the Products did not have a market value equal to the regular price displayed. Thus, the warranty was breached.

166.     Plaintiffs provided Defendants with notice of the breaches of warranty, by mailing notice letters to Defendants' headquarters with this Complaint.

29

167.     Plaintiffs and the subclass were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known the truth, or (b) they overpaid for the Products because the Products are sold at a price premium due to the warranty.

### COUNT VIII
**Quasi-Contract/Unjust Enrichment**
**(By Plaintiffs and the California Subclass)**

168.     Plaintiffs incorporate each and every factual allegation set forth above.

169.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class. In the alternative, Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

170.     As alleged in detail above, Defendants' false and misleading advertising caused Plaintiffs and the class to purchase Saks Products and to pay a price premium for these Products.

171.     In this way, Defendants received a direct and unjust benefit, at Plaintiffs' expense.

172.     Plaintiffs and the class seek restitution.

### COUNT IX
**Negligent Misrepresentation**
**(By Plaintiffs and the California Subclass)**

173.     Plaintiffs incorporate each and every factual allegation set forth above.

174.     Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

175.     As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiffs and California Subclass members concerning the existence and/or nature of the discounts and savings advertised on its website.

176.     These representations were false.

177.     When Defendants made these misrepresentations, they knew or should have known that they were false. Defendants had no reasonable grounds for believing that these representations were true when made.

178.     Defendants intended that Plaintiffs and California Subclass members rely on these

representations and Plaintiffs and subclass members read and reasonably relied on them.

179.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

180.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and California Subclass members.

181.    Plaintiffs and California Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Saks Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentation.

**COUNT X**
**Intentional Misrepresentation**
**(By Plaintiffs and the California Subclass)**

182.    Plaintiffs incorporate each and every factual allegation set forth above.

183.    Plaintiffs bring this cause of action on behalf of themselves and the California Subclass.

184.    As alleged more fully above, Defendants made false representations and material omissions of fact to Plaintiffs and California Subclass members concerning the existence and/or nature of the discounts and savings advertised on its website.

185.    These representations were false.

186.    When Defendants made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

187.    Defendants intended that Plaintiffs and California Subclass members rely on these representations and Plaintiffs and California Subclass members read and reasonably relied on them.

188.    In addition, subclass-wide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy its Products.

189.    Defendants' misrepresentations were a substantial factor and proximate cause in

1  causing damages and losses to Plaintiffs and California Subclass members.

2      190.    Plaintiffs and California Subclass members were injured as a direct and proximate

3  result of Defendants' conduct because (a) they would not have purchased Saks Products if they had

4  known that the representations were false, and/or (b) they overpaid for the Products because the

5  Products are sold at a price premium due to the misrepresentation.

6                                  **PRAYER FOR RELIEF**

7      191.    Plaintiffs demand the right to a jury trial on all claims so triable.

8      192.    WHEREFORE, the Plaintiffs, on behalf of themselves and others similarly situated,

9  respectfully requests that the Court:

10         A.  Certify the proposed Class;

11         B.  Appoint Plaintiffs as class representative and Plaintiffs counsel as class counsel;

12         C.  Temporarily and permanently enjoin Defendants from continuing the unlawful,

13             deceptive, fraudulent, and unfair business practices alleged in this Complaint;

14         D.  Award damages, including compensatory and exemplary damages, to Plaintiffs and

15             the Class in an amount to be determined at trial;

16         E.  Award statutory damages and/or penalties to Plaintiffs and the Class;

17         F.  Award punitive damages;

18         G.  Award Plaintiffs and the Class their expenses and costs of suit, including reasonable

19             attorneys' fees to the extent provided by law;

20         H.  Award pre-and post-judgment interest to the extent provided by law; and

21         I.  Award such further relief as the Court deems just and proper.

22

23

24  Dated: October 3, 2024                    Respectfully Submitted,

25                                            */s/ Matthew J. Langley*
                                              Matthew J. Langley (SBN 342846)
26                                            **ALMEIDA LAW GROUP LLC**
                                              849 W. Webster Avenue
27                                            Chicago, Illinois 60614
                                              t: 312-576-3024
28

                            CLASS ACTION COMPLAINT

1

matt@almeidalawgroup.com

2

**PEIFFER WOLF CARR**
3    **KANE CONWAY & WISE, LLP**

4    Brandon M. Wise*
     Domenica M. Russo*
5    One US Bank Plaza, Suite 1950
     St. Louis, MO 63104
6    bwise@peifferwolf.com
     drusso@peifferwolf.com
7

8    *pro hac vice forthcoming

9    *Attorneys for Plaintiff & the Proposed Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

### DECLARATION OF MATTHEW J. LANGLEY
### <u>PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)</u>

I, Matthew J. Langley, declare as follows:

1.      I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act.  I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.  I am one of the attorneys representing Plaintiff and the putative class in this matter.

2.      Defendants Saks & Company, LLC, Saks Fifth Avenue, Inc., and Saks Off 5th, LLC are doing business in the Northern District of California.

3.      Plaintiffs Alice Kyungo and Ebony Edgerson reside in the Northern District of California.  Plaintiffs purchased Defendants' products in this District and viewed Defendants' labels in this District.  Their claims are typical of those of the Class they seek to represent in this action.

3.      This action was commenced in the United States District Court for the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on October 3, 2024 in Chicago, Illinois.

_/s/Matthew J. Langley._
Matthew J. Langley

CLASS ACTION COMPLAINT